## MARIA LOPEZ DE LOPEZ, ADM'X, RESPONDENT, v. CENTRAL ARIZONA MINING CO., APPELLANT.

DEFENDANT IN DEMURRING TO COMPLAINT FOR FAILURE TO STATE FACTS SUFFICIENT to constitute a cause of action, and specifying in his demurrer certain grounds of insufficiency, can only rely upon the defects specified. It is otherwise if the demurrer is general, and without specification.

ABSENCE OF FAULT ON PART OF PLAINTIFF, in an action to recover for personal injuries caused by the defendant's negligence, need not be averred or proved by him.

PLAINTIFF IN SUCH ACTION CAN NOT RECOVER IF HIS OWN WANT OF CARE or negligence in any degree contributed to the result complained of. It is no defense, however, if the plaintiff's act might have contributed, or did contribute, to the injury. It must have been by his fault, not merely by his act.

OWNER OF MINE WHO WORKS IT IN DANGEROUS BUT ONLY PRACTICABLE MANNER is not liable for injuries to an employee, caused by a fellow-servant in the course of the employment, if such employee had knowledge of the danger, unless the injury complained of resulted from the wrongful act, neglect, or default of the owner.

APPEAL from the district court of the second judicial district, county of Maricopa. The appeal is from a judgment in favor of the plaintiff, in an action to recover for the death of her husband by reason of the defendant's negligence, and from an order denying the defendant a new trial. The further facts appear in the opinion.

*Tweed & Hancock* and *Caleb Dorsey*, for the appellant.

On the twenty-first day of June, A. D. 1881, and for a long time previous, Florence Lopez was, and had been, in the employ of the defendant corporation, as a miner in the Vulture mine, and had worked in said mine for seven years. On the twenty-first day of June, A. D. 1881, he was killed by some rock falling on him while he was at work in the mine. His work was to remove the rock after it had been blasted down from above by other miners. The place in which he worked was at the bottom of an open cut, which was about a hundred and fifty feet wide on the top, and about fifty or sixty feet deep. The rock was blasted down from the side of the open cut near the surface of the ground, and Florence Lopez was at work in the bottom of the open cut, removing the rock through a chute to a lower tunnel, as it was blasted down by other miners from above. It was the

custom of the mine for the blaster to give notice to the men below, to get out of the way just before he fired off a blast, and to stay out of the way until all the loose rock was pried down which was made loose by the blast.   Such notice was given at the time Lopez was killed.

Florence Lopez knew that it was dangerous to be there when the loose rock had not been pried down.   In fact he claimed to believe and know that the place was a dangerous place to work in under any circumstances, even when no blasting was going on.   He had been working in the mine for six or seven years, and had every opportunity to know if it was a dangerous place to work in; and the rock which fell and caused his death was in full view of the place where he was at work, and could be easily seen by him.

The case was tried by a jury, which rendered a verdict of three thousand dollars for plaintiff.   Defendant made a motion for a new trial, which was overruled; and defendant appealed to this court from the judgment and order overruling defendant's motion for a new trial.

1. The court below erred in allowing any evidence to be given under the complaint on the part of the plaintiff over the objection of defendant's attorneys.   The complaint had been demurred to on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was overruled by the court.   By answering the complaint the defendant did not waive its right to object to the complaint on the grounds of the jurisdiction of the court, nor that the complaint does not state facts sufficient to constitute a cause of action.   These objections can be made at any time, and at any stage of the proceedings.

The main question then is, Does the complaint state facts sufficient to constitute a cause of action?   If it does not, then it is clear that the complaint is a nullity, and no evidence should have been given, on the part of the plaintiff, over the objections of defendant's attorneys.   We contend that the complaint does not state facts sufficient to constitute a cause of action, and that the evidence should not have been allowed.

The complaint states that for a long time prior to the death of Lopez, the defendant had endangered the lives of the miners working in its mine by not having proper and

A. T. REPS. I—30

sufficient supports and pillars in the mine to prevent its tunnels and excavations from caving in. It would appear from this allegation in the complaint that the place was dangerous to work in, for the want of pillars and supports, and that the danger was apparent to Lopez, and to every miner working in the mine; for it had been in that condition for a long time previous to the death of Lopez. Under such a statement of facts the law presumes that Lopez was guilty of negligence, or he would not have worked there; and, in order to rebut this presumption, it makes it incumbent upon him also to state in his complaint that the dangerous condition of the mine was not known to him, and could not with reasonable care and dilligence have been discovered by him; and also to state that he was free from negligence, and acted with ordinary prudence in avoiding the danger. No such averments are in the complaint, and without them the complaint does not state facts sufficient to constitute a cause of action.

Where the negligence of the plaintiff caused or contributed to the injury received, the defendant is not liable, as will be seen from the authorities hereafter cited.

The courts in various states of the Union have been very much divided on the subject whether the plaintiff should state in his complaint that he acted with due and ordinary care to avoid the danger, or that the danger was unknown to him, or whether such matters are matters of defense, and should be set up in the defendant's answer. It has been decided and settled in Massachusetts, Maine, Iowa, Illinois, Connecticut, Mississippi, Michigan, and Indiana, that in order to make out a *prima facie* case, the plaintiff must not only show negligence on the part of defendant, but he must also show that he himself was in the exercise of due care in respect to the occurrence from which the injury arose. 2 Thompson on Negligence, 1176, 1178, and notes, where all the cases are collated from each of the states above named. In Pennsylvania, Missouri, Wisconsin, Kentucky, Maryland, Alabama, Kansas, Minnesota, and New Jersey, it has been decided that the negligence of the plaintiff contributing to the injury complained of is a matter of defense, and that ordinarily the burden of proof is on the defendant. (The same authorities last above cited.)

The authorities on this subject are so numerous and apparently so conflicting, that I have deemed it unnecessary to cite them in detail and comment upon each case separately, but will content myself with referring the court to the authors who have collated all of said authorities, and who have stated what ought to be the rule which should be followed in such cases. In 2 Thompson on Negligence, 1178, the author says: " On an examination of the authorities it will be found that where the courts decided that the burden of proof is on the plaintiff to show due care on his part, they have also held that this proof need not be direct, but may be inferred from the circumstances attending the occurrences causing the injury; and in those states where the doctrine obtains that contributory negligence on the part of the plaintiff is a matter of defense, if his case raises an inference of negligence on his part, he must in order to make out a *prima facie* case prove that he was guilty of no negligence."

Judge Lyons, in a case decided by the supreme court of Wisconsin, has very well stated the rule: "We hold, that in the absence of any evidence tending to show that the plaintiff is chargeable with negligence contributing to the injury of which he complains, the presumption of law is that he is free from such negligence, and the burden is upon the defendant to prove such contributory fault, if the same is relied upon as a defense. The rule here adopted does not apply to a case in which the proofs on the part of the plaintiff show or tend to show his contributory negligence. If such negligence conclusively appears, the court will nonsuit the plaintiff, or order the jury to find for the defendant." Shearman & Redfield on Negligence, sec. 43 and note, is to the same effect. He approvingly quotes the rule laid down by Judge Denio, in *Johnson* v. *Hudson River Railroad Company,* 20 N. Y. 65, which is as follows: "I am of opinion that it is not a rule of law of universal application, that the plaintiff must prove affirmatively that his own conduct on the occasion of the injury was cautious and prudent. The *onus probandi* in this, as in most other cases, depends upon the position of the affair as it stands upon the undisputed facts. Thus, if a carriage be driven furiously through a crowded thoroughfare, and a person is

run over, he would not be obliged to prove that he was cautious and attentive, and he might recover, though there were no witnesses of his actual conduct. The natural instinct of self-preservation would stand in the place of positive evidence, and the dangerous tendency of defendant's conduct would create so strong a probability that the injury happened through his fault, that no other evidence would be required; but if one make an excavation or lay an obstruction in the highway, which may or may not be the occasion of an accident to a traveler, it would be reasonable to require a party seeking damages for an injury to give general evidence that he was traveling with ordinary moderation and care. The obligation to give such evidence would be greater or less, as the impediment was more or less dangerous."

This rule, as stated by the New York court, was approved by the supreme court of the United States in the case of *Railroad Company* v. *Gladmon*, 15 Wall. 406; see also Shearman & Redfield on Negligence, secs. 44, 45. In section 45 the author says: "If it appears that any defects in the things or faults in the persons employed by plaintiff contributed to his injury, the burden is clearly upon him to show not only that he did not know or suppose that such defects or faults existed, but also that he was in no fault for not knowing of their existence."

It is plain, from the foregoing authorities, that the authors above cited, from the authorities collated by them, from which they have adduced the rule above stated, have divided all the cases of negligence into two classes; in one of which it is absolutely necessary for the plaintiff, not only to prove the negligence of the defendant, but also to prove that he himself acted with due care and prudence. This is the class of cases where the proof on the part of the plaintiff of the negligence of the defendant justifies an inference that the plaintiff was also negligent. The other class is where the evidence on the part of the plaintiff does not justify an inference that the plaintiff himself was negligent. In such cases the plaintiff need not prove that he acted with due caution and prudence. Those are matters of defense, which must be set up and proved by the defendant.

The case at bar comes under the first class, and it is

necessary for the plaintiff to prove that he acted with due care and prudence. If it is necessary, then, to prove these facts, they must be stated in the complaint, or the complaint does not state facts sufficient to constitute a cause of action. The facts stated in the complaint do warrant an inference that the plaintiff himself was negligent. The averment in the complaint is as follows: " That upon the said twenty-first day of June, A. D. 1881, and for a long period of time prior thereto, said defendant, in working and excavating upon said Vulture mine, wrongfully and carelessly neglected to keep in good and safe condition and repair, by building and maintaining in its tunnels, shafts, and excavations, proper and sufficient supports and pillars to prevent their tunnels and excavations from caving in, thereby endangering the lives of the servants and employees of said defendant, laboring in said mine."

The allegations of the complaint, if true, warrant the inference that the dangerous condition of the mine was apparent and could be plainly seen, and that plaintiff did see and know its dangerous condition; and that the complaint, under the facts stated, would not state a cause of action unless it also stated that the plaintiff was ignorant of the dangerous condition, and could not have discovered it with reasonable care and diligence. For these reasons we contend that the complaint is a nullity, and that the court erred in permitting any evidence to be introduced under it.

2. The court erred in refusing to grant defendant's motion for a nonsuit.

(1) The evidence shows that the plaintiff considered the mine dangerous to work in, and that its dangerous condition was plainly to be seen by him; and that he well knew its condition; and if, after knowing its condition, he continued to work there, he himself assumed all the risk from the dangerous condition of the mine, and can not recover of the defendant damages for any injuries which he may have received. *McGlynn* v. *Brodie*, 31 Cal. 376; *Buzzell* v. *Manufacturing Co.*, 48 Me. 113; *Loonam* v. *Brockway*, 3 Robt. 78; S. C., 28 How. Pr. 472; *Illinois Central* v. *Jewell*, 46 Ill. 99; *Ship Anglo-Norman*, 4 Saw. 185; *Kielley* v. *The Belcher Silver Min. Co.*, 3 Id. 500; Shearman & Redfield on Neg., sec. 94, and notes.

(2) The evidence to show that he did know the condition of the mine was introduced by the plaintiff himself, and is wholly uncontradicted.

Calisto Esquibel testified as follows: "I was working right there with him. I considered that a dangerous place about a month before Lopez was killed. Lopez so considered it. Lopez often said it was a dangerous place."

Teópilo Hernandez testified as follows: "I knew the place in this mine where Lopez was killed. I knew of two men working there a few days before his death. I know that these men quit working there on account of its being a dangerous place. Lopez continued to work there after these men left."

Under that evidence, it is plain, under the authorities above cited, that Lopez could not recover, as he continued to work with full knowledge of the dangerous condition of the mine. Upon the plaintiff's own evidence, then, it was plain, that as a question of law, the plaintiff could not recover, and the court should have granted the nonsuit.

3. The evidence is plainly insufficient to sustain the verdict, and the verdict is against law. In addition to the evidence given by the plaintiff as above stated, it was shown by the defendant's evidence, that the mode of working the mine was as follows: "The mine was worked from the top down, by making an open cut by the side of the vein of quartz, and after the open cut was made a certain depth, the quartz was blasted down from the top, and when it fell to the bottom of the cut it was removed by other miners; and it was impracticable to work the mine in any other way. It was also the custom, when the blasters were about to put off a blast, to give notice to the men working below, by crying out "fire," so that they could get out of the way of any danger, and they were also instructed to stay out of the way until the blast was fired off, and all the rock loosened by the blast had been pried down. The testimony further shows that notice was given by the blasters immediately before Lopez was killed, and that Lopez returned to the place where he was killed before the loose rock was pried down. The testimony also shows that the superintendent often warned Lopez against the danger of loose rock falling after a blast had been put off.

It is very clear, then, that the defendant, through its superintendent and foreman, had done their whole duty by informing Lopez of all the dangers that he was likely to incur by working in said mine, and he was fully instructed not to expose himself to such dangers.  This being the case, the defendant was not guilty of negligence, and it is plain that the plaintiff came to his death by his own rashness and want of care in not staying out of the way, and in continuing to work in said mine after he had been informed of the dangers he would likely incur if he worked there.  The court instructed the jury to this effect.

Under this evidence and the instructions of the court, the verdict is evidently against law, and the evidence is entirely insufficient to support the verdict, and the court below erred in not setting aside the verdict and judgment, and granting a new trial on this point alone.

It is evident from the evidence given in this case, and from the authorities above cited, that had Lopez not been killed he could not have sustained this action for damages, for the reason that there is no evidence of any negligence on the part of the defendant, and that if there was any negligence at all it was on the part of the blasters, who were co-servants with Lopez, engaged in the same common employment.  The master is not responsible to a servant for injuries received by the negligence of a co-servant.  Blasters and miners removing rock are co-servants engaged in the same common occupation.  *Kielley* v. *The Belcher Silver Mining Co.*, 3 Saw. 500.

If Lopez could not have sustained this action for damages, it can not be sustained by his administratrix under chapter 54 of the compiled laws of Arizona.

The defendant moved to strike out the evidence of Maria Lopez as to the age of the deceased, on the ground that it was hearsay testimony which was overruled by the court.  The witness testified that she had no other knowledge of the age of Lopez, except what she obtained from Lopez himself and his mother.  This ruling was certainly erroneous, as it was entirely hearsay evidence.

The defendant's attorney moved to strike out the evidence of Mariana Lopez, as to the age of the deceased, on the ground that she herself kept no record of his birth, and

that her testimony as to his age was given wholly from her recollection. She further testified that there was a record of his birth and baptism at the church of San Miguel, where he was baptized. This record, being in existence, was better evidence of his birth than the evidence of his mother based upon mere recollection. That being the best evidence, it should have been produced, and it was error to introduce any secondary evidence, for the reason that it is a well-settled principle of law that the best evidence must always be produced. This is too familiar a principle to need any citation of authorities.

The court erred in permitting the plaintiff, against the objection of the defendant, to ask Ramon Garcia the following question: "A short time before the death of Lopez, do you know of any other accident or caving in of that same roof?" The objection to this question was, that it was entirely irrelevant, as it does not tend to prove any issue in this case. The court certainly erred in permitting the question.

The court erred in refusing the ninth charge asked by the defendant's counsel. The authorities cited above, on the point that the complaint does not state facts sufficient to constitute a cause of action, apply to this charge. The case at bar is one of those cases which falls within the class which require the plaintiff to prove that he did exercise care and prudence, and that unless he did so prove he was not entitled to recover. These cases are so numerous, and have been cited in this brief on the point referred to, that it is useles to cite them again. Under those authorities this charge is certainly law, and applicable to the facts in the case as proven, and should have been given.

The court erred in refusing to give the thirteenth charge asked by defendant's counsel. This charge should have been given. It is certainly law, and applicable to the facts of the case as proven. *Kielley* v. *The Belcher Silver Mining Co.*, 3 Saw. 500; *McDonald* v. *Hazeltine*, 53 Cal. 35; *Sowden* v. *Idaho Mining Co.*, 55 Id. 443; Shearman & Redfield on Negligence, sec. 90.

The court erred in giving the following charge asked by the plaintiff, and excepted to by the defendant: "But if a man does imprudently and incautiously go into a mine in

performing his ordinary labor under the direction of the company or party working the mine, and is killed or injured by accident while there, the party or company working the mine is responsible, unless the said company or party working the mine has used reasonable care and prudence to prevent and avert a danger known to them, and provided, that while there the injured person did nothing to immediately contribute to the injury." This charge is not law, even if it plainly expressed the idea of the attorney who drew it; but there is a confusion of ideas in it, and it is difficult to understand exactly what it means. The words "imprudently" and "incautiously" would seem to have no force or effect in this charge, if you are to construe them with the last two lines of the charge, which are as follows: "That while there the injured person did nothing to immediately contribute to the injury." It is impossible for a person to imprudently or incautiously go into a mine, unless there is some seen and known danger to excite his prudence and caution. If there was any seen or known danger from which he had reasonable grounds for apprehending any injury to himself, it was rashness and gross negligence on his part to have entered the mine; and if he did so enter and did nothing else, the mere entry of the mine under such circumstances would be the proximate cause of his death, even if he did nothing else, should he be killed while in the mine.

For these reasons we ask that the judgment of the court, and order overruling defendant's motion for a new trial, be reversed and that a new trial be granted.

*Alsap & Baker* and *Cox & Campbell*, for the respondent.

This action is by the personal representative of the deceased. For the sake of easy reference we reprint the statute under which the complaint was filed:

"Sec. 1. Whenever the death of a person shall be caused by the wrongful act, neglect, or default; and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an

action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.

"Sec. 2. Every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate, and in every such action the jury may give such damages as they shall deem fair and just with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person, provided that no moneys so recovered shall be applied in discharge of any debts or liabilities of the person so killed, nor pass into the hands of his executors or administrators as assets of his estate." Comp. Laws, 54.

The complaint charges that the death of the deceased was caused by the wrongful neglect of the appellant in failing to make proper supports and pillars in the excavations of the Vulture mine. The answer denies any negligence in that particular, and avers that deceased came to his death by reason of his own want of care and prudence. The following facts are not questioned in the pleadings of the appellant, and are to be taken *pro confesso:* 1. The appellant is a corporation, and owner of the Vulture mine; Lopez was killed in that mine June 21, 1881, while in the employ of appellant as a miner. 2. Lopez was the husband of respondent, and left him, surviving, his widow and one child of such marriage, a boy about a year and a half old. 3. Respondent is the administratrix of the estate of the deceased. The jury returned a verdict for three thousand dollars damages in favor of respondent.

An action of this nature would not lie at the common law. *Actio personalis moritur cum persona.* Lord Campbell's act aided this defect. It has been incorporated in most of the statutes of the various states of the Union. The one of this territory is nearly that of New York. It in no sense depends upon any other statute, declaring some duty. The duty of keeping and working a mine in a safe condition and

manner to employees is one that obtains at the common law: Shearman & Redfield on Negligence, sec. 290 et seq.; 2 Bla. Com. 197, 198; *Taylor* v. *W. P. R. R. Co.*, 45 Cal. 323; *Beeson* v. *G. M. G. M. Co.*, 57 Id. 20; *Gay* v. *Winter*, 34 Id. 153; *Mathews* v. *Warner*, 29 Gratt. 570; S. C., 26 Am. Rep. 396; Cooley on Torts, 628 et seq.

The complaint omits to charge that the accident occurred without the fault of the deceased.

The allegation was not essential. That was a matter of pleading and proof by the appellant. The deceased's care for his own safety may fairly be presumed: Shearman & Redfield on Negligence, secs. 43, 44; *Robinson* v. *W. P. R. R. Co.*, 48 Cal. 409; *Knaresborough* v. *Belcher S. M. Co.*, 3 Saw. 446; *Holmes* v. *Clarke*, 6 Hurl. & N. 348; Wood's Master and Servant, 706, note.

The question of negligence is peculiarly one for the jury. Wood's Master and Servant, 725, 726, 727; *Paterson* v. *R. R. Co.*, 76 Pa. St. 389; S. C., 18 Am. Rep. 412; *Laning* v. *R. R. Co.*, 49 N. Y. 521; S. C., 10 Am. Rep. 417; *Gay* v. *Winter*, 34 Cal. 153; *Jamison* v. *San Jose & Santa Clara R. R. Co.*, 55 Id. 593; *Fernandes* v. *Sacramento City R. R. Co.*, 52 Id. 45; *Greenleaf* v. *Illinois Cent. R. R. Co.*, 29 Iowa, 14; S. C., 4 Am. Rep. 181; Shearman & Redfield on Negligence, sec. 11.

Did the deceased contribute to his own injury in a degree sufficient to prevent a recovery in this action?

This presents the only question we care to discuss at any length. The evidence in this particular is conflicting, and the rule is well established, that in such cases the appellate court will not disturb the verdict. *Hawkins* v. *Abbott*, 40 Cal. 639; *Rice* v. *Cunningham*, 29 Id. 492; *Jones* v. *Shay*, 50 Id. 508; *Hellman* v. *Howard*, 44 Id. 104; *White* v. *Lyons*, 42 Id. 283; *Trenor* v. *C. P. R. R. Co.*, 50 Id. 222.

Much stress is laid upon the fact that one of the witnesses testified in substance that the deceased knew the particular place in the mine was dangerous.

We are not conceding that the plaintiff's intestate had any knowledge of the real condition of the particular point of the accident. He certainly was unaware of the imminent danger in which he was placed, and there is nothing in the evidence from which to draw the conclusion that the defect

was apparent or obvious. It is only knowledge of this character that estops the servant from recovery. The master is bound not to expose the servant to dangers of which he knows, and it his duty to communicate to the servant any danger about the work which is latent or which has been brought to the master's direct knowledge. This the appellant did not do. The master is to take all necessary precautions for the servant's safety, and the servant is authorized in relying upon the superior skill and knowledge and care of the master in so doing. The servant's primary duty is obedience to orders, and the instances are countless, when in performing that duty, all of his attention and thought is required. Such are the facts of this case. The plaintiff's intestate was at the point in obedience to the orders of the appellant—he was not in the wrong in going there. The master had been previously informed of the risk, but in no wise made it known to plaintiff's intestate. The place was dangerous, but not obviously and immediately so—at least to the servant's knowledge. Other men had worked at that point quite recently and no accident happened, that is, so far as the deceased knew. Under this state of facts, the employer is clearly responsible. In *Patterson* v. *Pitts & Co. R. R. Co.*, 76 Pa. St. 389; S. C., 18 Am. Rep. 412, the court said: "Where the servant, in obedience to the requirements of the master, incurs the risk of machinery, which though dangerous is not so much so as to threaten immediate injury or where it is reasonably probable that it may be safely used, and by extraordinary caution or skill, the master is liable for a resulting accident." The case is of value, because the plaintiff had some knowledge of the dangerous condition of the machinery, and that fact was relied upon and urged.

In *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 441; Wood's Master and Servant, 725, which has, in a measure, come to be regarded as a leading case, Bigelow, J., said: "The plaintiff was in the discharge of his duty in placing himself in a perilous position—a duty the performance of which was known to and sanctioned by the defendant. The fact that he was in such a position has no tendency to prove that he was negligent or careless. It may be suggested that the plaintiff ought not to recover because he continued

in the performance of his duties after he was aware of the existence of the defect in the road.   *   *   *   His continuance in the employment did not necessarily and inevitably expose him to danger."

*Clarke* v. *Holmes*, 7 H. & N. 937; Wood's Master and Servant, 720, note, an English authority and frequently resorted to, was a case where the master had promised the servant to repair the defect.  After stating the reasons why plaintiff should recover, Chief Justice Cockburn said: "Besides, a servant knowing the facts, may be utterly ignorant of the risk."

In *Baxter* v. *Roberts*, 44 Cal. 188, Wallace, C. J., said: "Nor is there any doubt that if the employer have knowledge or information showing that the particular employment is, from extraneous causes known to him, hazardous or dangerous to a degree beyond that which it fairly imports, or is understood by the employee to be, he is bound to inform the latter of the fact, or put him in possession of such information; these general principles are elementary and fully established.

"The employer, if he knew or was informed of a threatened danger, was bound to communicate the information to his employee about to be exposed to it in the course of his employment;   *   *   *   and if the employer have such information or knowledge, and withhold it from the employee, and the latter afterwards be injured in consequence thereof, the employer is liable to him."

In another case where the plaintiff knew of the defect some time prior to the accident, and was injured while in the discharge of his duty about the defect, it was held that the question whether the plaintiff was negligent to such an extent as to prevent a recovery by him, depended upon whether he knew the danger incident to doing the act in view of the defect, the injury not being a necessary or inevitable result of doing the act.   *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282; Wood's Master and Servant, 732.

The following cases sustain the rule as announced by the above decisions: *Ford* v. *R. R. Co.*, 110 Mass. 240; *Plank* v. *R. R. Co.*, 60 N. Y. 607; *Laning* v. *R. R. Co.*, 49 Id. 521; *Gibson* v. *R. R. Co.*, 46 Mo. 163.

We add that it is not necessary that plaintiff's intestate should have been free from all negligence in order for a recovery. If his negligence was slight or remote, and the defendant's gross or proximate, a recovery may be had. *Union Pacific R. R. Co.* v. *Rollins,* 5 Kans. 167, 191; *Kennayde* v. *Pacific R. R. Co.,* 45 Mo. 255; *Chicago, Burlington & Quincy R. R. Co.* v. *Van Patten,* 64 Ill. 510; *Kline* v. *Central Pacific R. R. Co.,* 37 Cal. 400.

Evidence is admissible if it is of a circumstance which, with other circumstances, tends to convince the mind of the truth of the main matter.

The *gravamen* of the charge is the negligence of the defendant. The employer who oversees and controls the works must see that they are safe. His prior knowledge of any defect is of the utmost importance. It may conclusively establish his negligence. It would be interesting to learn in what manner a dangerous place in a mine, and that the master was aware of it, could be better proved than by showing former accidents at that particular place a few days before the fatal one, by the caving in of the soil and rock, and that a knowledge of such accident was conveyed directly to the master. Such was the tendency of the evidence objected to. That is the rule followed in reference to prior fires from locomotives, also in regard to falling of an elevator. Shearman & Redfield on Negligence, sec. 333; *Malone* v. *Hawley,* 46 Cal. 409; *Henry* v. *S. P. R. R. Co.,* 50 Id. 176; *Longabaugh* v. *Vir. City & T. R. R. Co.,* 9 Nev. 272; *Hull* v. *Sacramento Valley R. R.,* 14 Cal. 388; *Gandy* v. *R. & N. W. R. R. Co.,* 6 Am. Rep. 683; *Field* v. *N. Y. C. R. R. Co.,* 32 N. Y. 339; *Sheldon* v. *Hudson River R. R. Co.,* 14 Id. 218.

6. The superintendent of a mine, invested with full power to choose his own assistants, to control and discharge them, and regulate the work of the mine, is not a fellow-servant with those engaged under him.

We are aware that in some states the decisions are adverse to the above doctrine, but we believe the weight of authority is in favor of the rule. *Beeson* v. *Green M. G. M. Co.,* 57 Cal. 20, and cases there cited.

By Court, French, C. J.:

This action is necessarily brought under the statute by the representative of the deceased, Florence Lopez. For about seven years prior to his death he had been employed in working as a miner in appellant's mine, the Vulture mine. On June 21st he was killed while working in said mine. The place in which he was at the time working was an open cut about one hundred and fifty feet wide at the top and about fifty or sixty feet deep. The rock was blasted and excavated, and pried down the side of the open cut, from near the surface, by other miners who were accustomed to give notice of the blasts and descent of the rock. Lopez's location was in the bottom of the cut, his work being the removal of the rock, thus thrown down by the miners above, to a chute. He was killed by some rock falling on him while so working.

The case was tried by a jury, which returned a verdict for plaintiff. Defendant moved for a new trial, which was denied. Defendant appeals to this court, from both the judgment and the order denying it a new trial.

The complaint does not state that the dangerous condition of the mine was not known to deceased, nor that it could not, with reasonable effort, have been discovered by him, nor that deceased was free from negligence, nor that he prudently attempted to avoid the danger.

Defendant demurred to the complaint, on the ground of want of sufficient facts to support the action, but specified the defects, and the omission to charge that the accident occurred without the fault of deceased is not among the specifications, and the practice is, that the party shall be confined to his specifications, although, if no specification be made under this ground of demurrer, it might stand on any defect.

But this specific defect is raised on the introduction of plaintiff's testimony, and on the motion for a nonsuit it became a proper subject for consideration. On this point, in this class of cases, there is very nearly an equally balanced conflict of practice in the courts of the different states, and we are not disposed to hold that absence of fault on the part of plaintiff must be averred and proved by plaintiff, while probably the preponderance of authority and practice hold

it to be matter for the answer and defense. An examination of authorities will show that the rule is not inflexible, even in the courts that hold respectively to the one or the other practice, but must depend, in some cases at least, on the facts, exigencies, and circumstances of the particular pleadings and cases.

The court did not, then, err in refusing the nonsuit so far as this point is concerned.

Then did the evidence on the part of plaintiff at this stage of the case show contributory negligence on the part of deceased? In *McGlynn* v. *Brodie,* Justice Sawyer, on page 380, 31 Cal., speaking for the court, says: " The risk of the accident was a risk incident to the employment in which the plaintiff was engaged. Possessed of all the knowledge which the defendants had as to the condition of the cupola, and with an opportunity of becoming better informed in the progress of the work in which he was engaged, plaintiff accepted the employment, and continued in it down to the moment of the accident. Where a party works with or in the vicinity of a piece of machinery insufficient for the purpose for which it is employed, or for any reason unsafe, with a knowledge or means of knowledge of its condition, he takes the risk incident to the employment in which he is thus engaged, and can not maintain an action for injuries sustained and arising out of accidents resulting from such defective condition of the machinery. This is the principle established by all the cases."

This is the doctrine laid down, not only in all the cases, but in the elementary works of Shearman & Redfield on Negligence, Thompson on Negligence, and other treatises on the same subject.

Without passing upon the question whether plaintiff's evidence shows that deceased knew of the danger at the point where he was working or had the means of knowing, does not the whole testimony in the record show without substantial conflict that he had such knowledge?

As to the general rule that a plaintiff can not recover for the negligence of the defendant if his own want of care or negligence has in any degree contributed to the result complained of, there can be no dispute. *Robinson* v. *W. P. R. R. Co.,* 48 Cal. 421, and cases there cited.

But it is necessary to distinguish between the act and fault of the complaining party. It is no defense to an action of this kind that the act of the deceased might have contributed or did contribute to the injury. It must be by his fault, not merely his act.

Was there negligence on the part of defendant? or, in the language of the statute, was there wrongful act, neglect, or default on its part?

Plaintiff alleges in her complaint: "That defendant wrongfully and carelessly neglected to keep in good and safe condition and repair [said mine], by building and maintaining in its tunnels, shafts, and excavations proper and sufficient supports and pillars, to prevent said tunnels and excavations from caving in," etc.

This is a broad allegation as to the mine generally, but the question in the case is as to the point only where the accident occurred. This was neither a tunnel nor shaft, but an open cut, and the work at this point consisted in blasting and prying down the rock, not in supporting it in place, and the evidence of defendant shows that this was the only practicable way of working the mine at this place, and there is no conflicting evidence to this whatever.

In order to recover, the plaintiff in an action of this kind must show that the act complained of was caused by the wrongful act, neglect, or default of defendant. It must also appear, by implication or otherwise, that the injured party did not in any degree contribute to the injury by his fault.

All proceedings, rulings, or instructions which conflict with, or even ignore, these last two propositions are erroneous in all trials. Tested by this rule, the statement on motion for a new trial in this case shows good, broad, cogent, decisive, and most ample grounds in support of the motion.

The judgment and order denying a new trial must be reversed, and the cause remanded for a new trial, and it has been so ordered.

PINNEY, J., concurred